[630 NYS2d 827]

Eric Rohring, Respondent, et al., Plaintiff, v City of Niagara Falls, Appellant and Third-Party Plaintiff. Falls Steel Erectors, Inc., Third-Party Defendant-Appellant. State Insurance Fund, Appellant. (Appeal No. 2.)

Fourth Department, July 14, 1995

## APPEARANCES OF COUNSEL

*Herzfeld & Rubin, P. C.,* New York City *(Herbert Rubin, David B. Hamm, Miriam Skolnik* and *Edward C. Cosgrove* of counsel), for appellants.

*Raymond C. Green,* New York City, for Falls Steel Erectors, Inc., third-party defendant-appellant, and State Insurance Fund, appellant.

*Lustig & Brown,* Buffalo, for City of Niagara Falls, appellant.

*Paul William Beltz, P. C.,* Buffalo *(Anne B. Rimmler* and *William A. Quinlan* of counsel), for respondent.

## OPINION OF THE COURT

BOEHM, J.

We are again called upon to construe the language in CPLR article 50-B *(see, Rohring v City of Niagara Falls,* 192 AD2d 228, *affd* 84 NY2d 60). This time the question concerns the requirements of the annuity contract to be posted as security pursuant to CPLR 5042 and 5043.

In his Labor Law § 240 action, Eric Rohring (plaintiff), was awarded damages of $2,501,311 and, after an article 50-B hearing, Supreme Court entered a structured judgment for the payment of periodic installments. We modified the judgment and the Court of Appeals affirmed *(Rohring v City of Niagara Falls, supra).* The matter was then remitted to Supreme Court for its approval of an annuity contract providing for payments pursuant to the modified judgment *(see,* CPLR 5042).

Defendant and third-party plaintiff City of Niagara Falls (Niagara Falls), third-party defendant Falls Steel Erectors, Inc. (Falls Steel) (collectively defendants), and the State Insurance Fund (State Fund) appeal from the order of Supreme Court, entered October 14, 1994, which directed Niagara Falls

and the State Fund to post security in the form of an annuity contract in compliance with the directive of the court. Defendants and State Fund also appeal from the order of Supreme Court, entered February 8, 1995, which denied their motion to validate the annuity contract as being in compliance with the court's order of October 14, 1994, and directing the entry of a lump-sum judgment in favor of plaintiff.

I

CPLR articles 50-A and 50-B were enacted as part of sweeping medical malpractice and tort reform legislation. Article 50-A, enacted in 1985, provides for structured judgments in medical and dental malpractice actions and, subsequently, in actions for podiatric malpractice. Article 50-B extends the structured judgment provisions of article 50-A to all tort actions. Both articles provide for the payment of awards for future damages incurred over the period of time specified by the jury.

Article 50-B was prompted by the findings of a commission established by Governor Cuomo in 1986 "in response to growing alarm over the spiraling cost and all too frequent unavailability of liability insurance for broad classes of insureds, particularly public entities" (*Insuring our Future*, Apr. 1986 Report of Governor's Advisory Commn on Liability Ins, at 1). The Commission issued two reports addressing problems in the insurance industry and suggested tighter insurance regulation and tort reform as a solution to the rising cost of liability insurance (*ibid.; Insuring our Future*, July 1986 Report of Governor's Advisory Commn on Liability Ins). There are many references in the reports to the special problems faced by governmental and other public entities in obtaining liability insurance (Apr. 1986 Report, *op. cit.*, at 6, 16, 25-27). One of the reforms suggested by the Commission was the extension of the structured judgment provisions of article 50-A to all tort actions. That was done when article 50-B was enacted.

Although it is clear that the legislation was intended to address the concerns of defendants and to ensure the availability of liability insurance by providing for the structuring of judgments with respect to awards of future damages in excess of $250,000 (*see*, CPLR 5041 [e]), the Legislature was also cognizant of the need to provide adequate security for the payment of the periodic installments required by the judg-

ments for the period of time over which such periodic payments were to be made. It did so by requiring defendants and their insurance carriers to purchase an annuity contract executed by a qualified insurer approved by the Superintendent of Insurance and to guarantee the payments thereunder (CPLR 5041 [e]; 5042, 5043). The Legislature also provided that, in the event payment was not made in a timely fashion, a plaintiff could apply to the court for an order requiring payment of the outstanding payments in a lump sum without reduction to present value (CPLR 5044).

## II

The court's structured judgment, entered August 6, 1992, tracked the language of article 50-B and required Niagara Falls and its insurance carrier, State Fund, to offer and guarantee the purchase and payment of an annuity contract from "an annuity company and/or other company, which is A+ rated by Best's [an insurance rating publication], which is designated as qualified by the Superintendent of Insurance, Department of the State of New York, and which has been approved and consented to by the Court to guarantee the payment of such an annuity contract". Thereafter, State Fund purchased an annuity contract from Continental Assurance Company (Continental), a company with an A+ Best's rating, and authorized by the State Insurance Department to write annuities under article 50-B. Plaintiff objected to the annuity contract on the grounds that it was not approved by the Superintendent of Insurance pursuant to CPLR 5042; Niagara Falls was not an owner of the contract; Niagara Falls and State Fund had not guaranteed the payments thereunder; and the contract prohibited acceleration of payments, although CPLR 5046 (a) and (b) provide for acceleration by court order in the case of hardship. By order to show cause, plaintiff moved for an order requiring defendants "to post and maintain security in the form [of] a court-approved annuity contract which meets the requirements of CPLR Article 50-B."

In response, defendants submitted a State Insurance Department order making all insurers licensed by the New York State Department of Insurance to write the insurance authorized by section 1113 (a) (2) of the Insurance Law (Annuities) "financially qualified to provide the security required under the provisions of Article 50-B of the Civil Practice Law and Rules." Defendants further furnished evidence of the A+

Best's rating of Continental and submitted an annuity contract with an added paragraph providing that Continental would make a lump-sum payment if ordered by the court in accordance with CPLR 5046. Defendants also submitted a letter from the Insurance Department concerning Continental Assurance Company, dated April 25, 1990, approving the form of annuity contract issued by Continental and a second letter to State Fund from the Insurance Department, dated November 8, 1994, advising that the changes in the terms of the annuity providing for acceleration of payment, added at plaintiff's request, were not material and were in compliance with the provisions of CPLR 5046.

On October 7, 1994, by a second order to show cause, plaintiff raised various other objections to the annuity contract, stressing especially that Niagara Falls and State Fund were required to issue separate guarantees of payment of the annuity but had not done so. At the conclusion of argument, the court directed defendants to present within 30 days an annuity contract that "has been authored and approved by the Superintendent of Insurance and contains therein guarantees by the defendant and the defendant's insurance carrier." The court further directed that ownership of the annuity contract be "in the name of the defendant and defendant's insurance carrier." By order entered October 14, 1994, defendants were directed to post security in the form directed by the court within 30 days, failing which a lump-sum judgment would be entered.

Although not conceding the correctness of the court's directives, defendants, nevertheless, attempted to comply. Thereafter, on November 11, 1994, defendants moved for an order pursuant to CPLR 5042 approving the annuity contract that had been purchased and attached a letter from the State Insurance Department, dated November 8, 1994, stating that the Department had reviewed the annuity contract and had found that the annuity contract complied with the requirements of article 50-B. Defendants also submitted a written guarantee from State Fund, executed by its General Attorney, guaranteeing the payment of the annuity contract issued by Continental; a written guarantee from Niagara Falls, executed by the Mayor, guaranteeing payment of the annuity contract; and a new cover page of the annuity contract naming Niagara Falls and State Fund as owners.

Plaintiff challenged the validity of both guarantees, arguing that the guarantee of Niagara Falls was not effective without

the approval of the City Council, and that the guarantee of State Fund was not effective without the approval of its Board of Commissioners. Plaintiff presented the further argument that, even if given, the City Council's approval would not suffice because article VIII (§ 2) of the State Constitution and Local Finance Law § 11.00 bar a municipality from assuming new debts extending for a period in excess of five years. Plaintiff maintained that the guarantee would have to extend for 35 years, the length of the annuity, and, therefore, it would be legally impossible for Niagara Falls to furnish the required guarantee.

The court found that the annuity contract complied substantially with its earlier directives, but that the guarantees furnished by Niagara Falls and State Fund were inadequate because the officers who executed the documents did not have the proper authority to do so, and because Niagara Falls' guarantee was not "appropriately funded as required by law." By order entered February 8, 1995, the court denied defendants' motion to approve the annuity contract and directed the entry of a lump-sum judgment in favor of plaintiff for the full amount of damages awarded by the jury.

III

The court erred in requiring separate guarantees from Niagara Falls and State Fund. The law requires only that the judgment direct defendants and their insurance carriers to purchase an annuity contract and to guarantee its payment (CPLR 5041 [e]). The annuity contract has been purchased. The judgment entered August 6, 1992 incorporates the language of the statute requiring the purchase of an annuity and the guarantee of payment. Thus, the required guarantee of payment is imposed upon Niagara Falls and State Fund by the mandate of the judgment; no separate instrument or further procedure is required to implement that guarantee. Therefore, both requirements were met.

This construction fulfills the purpose of article 50-B. As previously discussed, municipalities were among the intended beneficiaries of the legislation. Obtaining the separate guarantee from Niagara Falls that is sought by plaintiff and that was directed by the court would be impossible, as defendants concede and as plaintiff contends, if it would necessitate the incurring of a new debt. Although it is unnecessary for us to determine whether a guarantee of payment of a preexisting

judgment is equivalent to the incurring of a new debt by Niagara Falls, we note that article VIII (§ 2) of the State Constitution limits such a debt to the length of its useful life, which is five years for a judgment or settled claim (Local Finance Law § 11.00 [a] [33]). Here, the annuity payments continue for more than five years, as they do in most cases implicating article 50-B. Thus, if the guarantee of payments due on an annuity contract were construed to be the incurring of a new debt, such a contract ordinarily could never be validly guaranteed by a municipality; in most cases a lump-sum judgment would be mandated whenever a judgment for future damages in excess of $250,000 is entered against a municipality. That is obviously not what the Legislature intended. To read the guarantee provision as plaintiff urges would defeat the ameliorative purpose of article 50-B to ease the financial hardship of municipalities resulting from ruinous liability awards and the difficulty in obtaining adequate liability insurance. Such an interpretation would thwart the rule that "in construing the words of a statute '[t]he legislative intent is the great and controlling principle' [citations omitted]. Indeed, the rule informs us that 'the general purpose is a more important aid to the meaning than any rule which grammar or formal logic may lay down' [citation omitted]" *(Braschi v Stahl Assocs. Co.,* 74 NY2d 201, 207-208; *see, Matter of New York Post Corp. v Leibowitz,* 2 NY2d 677, 685).

The construction that we offer does not do injury to the protections afforded to plaintiff by article 50-B. An annuity contract has been purchased that will make the periodic payments required by the structured judgment. Those payments are further guaranteed by Niagara Falls and State Fund; their liability continues even after the purchase of the annuity contract and until the judgment is paid in full. As one practice commentary has noted: "The defendants and their insurors must be directed by the court's order to offer and guarantee to the plaintiff an annuity contract which will produce the specified payments over the specified period. Thus, if the annuity contract is brokered to another insurance carrier, the original liability insuror, together with the defendant * * * remain *[sic]* liable as guarantors for the judgment awarded in the event that the annuity insuror *[sic]* defaults on its contractual obligation" (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5041.03, at 50-B-7).

Of interest also is the opinion of the State Insurance Department expressed in its letter of October 4, 1994: "You

request our views on how the tortfeasor and its insurer may comply with the requirement in CPLR § 5041 (e) that the 'defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract'. It is the position of this Department that the above provision requires that the insurer be secondarily liable if the insurer issuing the annuity contract should fail to honor its contractual obligations. Accordingly, unless the above obligation has been assumed by another with the permission of the Plaintiff, the tortfeasor's insurer must continue to reflect the amount of the outstanding judgment in its reserves."

In addition to making Niagara Falls and State Fund guarantors of payment of the annuity, article 50-B also provides that, if payment is not made in a timely fashion, plaintiff "may petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum" (CPLR 5044).

Thus, the statute, as well as the judgment, imposes a guarantee of payment upon Niagara Falls and, necessarily, its insurer, State Fund. There is nothing in the statute, however, that suggests that a municipality is required to hold in reserve sufficient funds to guarantee payment of the annuity. Indeed, if that were a requirement the benefits of article 50-B would be severely compromised. Niagara Falls would be required to maintain the amount of the judgment in its reserves for 35 years until the annuity contract is fully paid. In light of the legislative intent of the statute, it is clear that, although Niagara Falls and its liability insurer remain liable until payment has been made in full, they act only as secondary obligors in the unlikely event that the annuity company fails.

Plaintiff argues that the absence of a separate guarantee will require an additional court proceeding if Continental defaults, but we are unable to discern how a separate guarantee would avoid the statutory procedure necessary to obtain a judgment for the payments outstanding. Further, the procedure called for by article 50-B is not unique in requiring application to a court for relief. Because a written guarantee is not a self-enforcing instrument, the enforcement of the obligation of a guarantor does not infrequently depend upon a court proceeding.

In light of our determination, it is unnecessary to discuss the other objections raised by plaintiff, except to reiterate that

the separate guarantees that were furnished by Niagara Falls and State Fund are not required by the statute. Those guarantees may be withdrawn by Niagara Falls and State Fund, if they choose to do so. We add also that ownership of the annuity contract is not required to be in the name of defendant and defendant's insurance carrier, nor is it necessary for the Superintendent of Insurance to approve every annuity contract separately.

## IV

We do not address plaintiff's constitutional attack on article 50-B, raised for the first time on appeal (see generally, Lanz v Feola, 181 AD2d 1053).

## V

Accordingly, the order entered October 14, 1994 should be modified by vacating that part of the first ordering paragraph that directed Niagara Falls and State Fund to post security in the form of an annuity contract as directed by the court in its oral decision of October 7, 1994, and by vacating the second and third ordering paragraphs and as modified affirmed. The order entered February 8, 1995 should be reversed, the motion granted and the matter remitted to Supreme Court for its approval of the annuity contract pursuant to CPLR 5042.

DENMAN, P. J., LAWTON, WESLEY and BALIO, JJ., concur.

Order unanimously reversed, on the law, with costs, motion granted, and matter remitted to Supreme Court for further proceedings in accordance with the opinion by BOEHM, J.

ERIC ROHRING, Respondent, et al., Plaintiff, v CITY OF NIAGARA FALLS, Appellant and Third-Party Plaintiff. FALLS STEEL ERECTORS, INC., Third-Party Defendant-Appellant. STATE INSURANCE FUND, Appellant. (Appeal No. 1.)—Order unanimously modified, on the law, and as modified, affirmed, with costs, to City of Niagara Falls, Falls Steel Erectors, Inc. and State Insurance Fund in accordance with same opinion by Boehm, J., as in Rohring v City of Niagara Falls (212 AD2d 320 [decided herewith]). (Appeal from Order of Supreme Court, Niagara County, Koshian, J.—annuity contract.) Present—Denman, P. J., Lawton, Wesley, Balio and Boehm, JJ.