OPINION OF THE COURT
Joseph G. Makowski, J.
The Present Motions
This matter comes before the court by way of order to show cause granted by the court on February 15, 2007 brought by defendants Erie County Industrial Development Agency (hereinafter referred to as EGIDA) and Niagara Frontier Transportation Authority (hereinafter referred to as NFTA) and Ciminelli Development Co., Inc., requesting relief pursuant to CPLR 2001 and 5021 (a) (2) as described below:
1. Signing and directing the entry of judgment in the forms annexed to the Harry Steinberg affirmation as exhibits A and B to the order to show cause.
2. Temporarily enjoining plaintiffs from filing a notice of lien, levying upon, taking any steps to encumber the properties, assets, or accounts of any of the defendants pending entry and satisfaction of said judgment.
*447 3. Signing orders in the form annexed to the Harry Steinberg affirmation as exhibit L declaring the judgments in these matters satisfied of record, which orders are to be held in escrow by counsel for defendants until judgments are duly paid and the required annuities have been purchased.
4. Allowing the entries of orders and marking of judgments satisfied.
5. Granting such other and further relief as to the court seems just and proper.
Pursuant to agreement of counsel, the court in issuing the aforementioned order to show cause issued the relief recited below:
Ordered that sufficient cause appearing therefor, plaintiffs have agreed to refrain from enforcing a notice of lien, levying upon, or taking any steps to encumber the properties, assets or accounts of any of the defendants pending the return date of this order to show cause.
On February 26, 2007, plaintiffs, Timothy Allison and Jeffrey Rutherford, by and through their attorneys Paul William Beltz, PC., filed a notice of cross motion requesting the following relief:
1. An order staying Firemen’s Fund from filing any judgment until the format is resolved by the court.
2. Further staying Firemen’s Fund from purchasing annuities until the contracts have been approved by the court.
3. Directing the carrier to supply copies of proposed annuity contracts for review by plaintiffs and approval by the court.
Procedural Background
The present dispute between the parties has its origin in a September 25, 2005 jury verdict on liability and damages in favor of plaintiffs Timothy Allison and Jeffrey Rutherford in their personal injury claims against defendants. Plaintiffs’ jury verdicts were appealed to the Appellate Division, Fourth Judicial Department. The court, on December 22, 2006, affirmed the jury determination on liability, but vacated and set aside certain damage awards of the plaintiffs subject to a proposed remittitur stipulation. (See Steinberg affidavit, exhibits E, F.)

Allison

The relevant portion of the holding of the Appellate Division, Fourth Judicial Department, in Allison v Erie County Indus. Dev. Agency (35 AD3d 1159 [2006]) is set forth below:
“It is hereby ordered that the judgment so appealed *448 from be and the same hereby is unanimously modified on the law by setting aside the award of damages for past and future pain and suffering and as modified the judgment is affirmed without costs, and a new trial is granted on those elements of damages only unless plaintiff, within 20 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the award of damages for past pain and suffering to $1 million and for future pain and suffering to $4 million, in which event the judgment is modified accordingly and as modified the judgment is affirmed without costs.” (35 AD3d at 1159.)

Rutherford

In its memorandum decision and order in Rutherford v Erie County Indus. Dev. Agency (35 AD3d 1161, 1161-1162 [2006]), the Appellate Division recites:
“It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by setting aside the award of damages for future pain and suffering and for future medical expenses and as modified the judgment is affirmed without costs, and a new trial is granted on those elements of damages only unless plaintiff, within 20 days of service of a copy of the order of this Court with notice of entry, stipulates to reduce the award of damages for future pain and suffering to $1 million and for future medical expenses to $325,000, in which event the judgment is modified accordingly and as modified the judgment is affirmed without costs.”
Following the rulings of the Appellate Division, plaintiffs, through their counsel, determined that each would accept the reduced awards. On the record before the court, it appears the defendants have requested the Appellate Division to reconsider its decision. Alternatively, defendants have sought permission to appeal to the Court of Appeals. Neither the request for reargument to the Appellate Division nor the appeal to the Court of Appeals prevents this court from addressing the issues submitted to it for consideration.
The Events of March 2007
In a letter dated March 7, 2007 from James Calarco, claim specialist for the Fireman’s Fund Insurance Companies to Anne *449 B. Rimmler, Esq., counsel for plaintiffs, defendants’ insurance carrier enclosed 10 checks totaling approximately $9.1 million representing the lump-sum payments, past due periodic payments, attorney’s fees, and interest due Timothy Allison, Jeffrey Rutherford, and Paul William Beltz, PC., as counsel. In his letter of March 7, 2007, Mr. Calarco writes:
“Dear Ms. Rimmler:
“Counsel has reviewed the two proposed judgments you annexed to the reply papers you served on March 1, 2007, and has concluded that defendants have no objections to the lump sum dollar amounts of the payments owed, or the timing and payouts for the annuities, as recited in your judgments. Accordingly, to terminate the running of interest on the portions of the judgments for (a) lump sum payments; (b) past due periodic payments; and (c) attorney’s fees, we hereby unconditionally tender to you the amounts due for these categories of payments, as well as separate checks for the total interest amounts that we have computed up to and including March 8, 2007.
“Enclosed please find the following checks in accordance with the amounts contained in the judgment as drafted by your office and annexed to your reply papers of March 1, 2007, as follows: . . .
“Since, as stated above, we have no disagreement with the payment amounts pursuant to your judgments, the only remaining issues in our motion currently pending before Justice Makowski, which is now returnable on March 23, 2007; are that defendants (a) do not consent to the entry of a judgment in a manner which will result in the judgment operating as a lien against the defendants’ property and assets or would in any way compromise the operations of defendants; and (b) do not agree with plaintiffs’ position that satisfactions of judgment need not be provided until after the last annuity payments have been made.” (Emphasis added.)
By letter dated March 8, 2007 from the law office of Paul William Beltz, PC., Debra A. Norton, Esq., responded to the March 7, 2007 letter of James Calarco as follows:
“Dear Mr. Steinberg:
“We are in receipt of correspondence from James Calarco of the Fireman’s Fund, purporting to ‘pay’ *450 portions of the as-yet unsigned judgments in the above case. We are aware of no authority allowing you to attempt to ‘pre-pay ’ an unsigned judgment, and we are therefore returning the 10 checks listed in the March 7, 2007 letter. Please allow the return of these checks to serve as notice to Fireman’s Fund that it is our position that 9% interest pursuant to CPLR §§ 5002 and 5003 continues to run until complete satisfaction of signed, modified judgments.
“As you are well aware, you previously obtained an Order to Show Cause asking the judge to sign judgments in the above matter and to simultaneously declare the judgments ‘satisfied’ by tender of checks plus the purchase of an annuity, the form of which you have refused to disclose to the Court and to us.” (Emphasis added.)
On March 9, 2007, Mr. Steinberg directed a letter to Ms. Norton which recites:
“I write in response to your letter dated March 8, 2007, in which you purport to return 10 checks issued by Fireman’s Fund in payment of the undisputed portions of the ‘up-front’ payments specified by the two judgments that your office proposed as the appropriate judgments to be entered in these cases. . . .
“Since there is no dispute as to the amounts specified in the judgments to be entered, the judge would have no basis for refusing to sign the judgments and signature of the judgments is a mere formality. Therefore, Fireman’s Fund was entitled to tender the undisputed amounts and is [sic] did so unconditionally. Your office and your clients were free to cash those checks without in any way limiting or prejudicing your remaining arguments with respect to when satisfactions should be issued, their form and what protections should be extended to the defendants. These are the matters that we can address on March 23, 2007.
“Our position is that interest has stopped running because Fireman’s Fund unconditionally tendered the full amounts due under the judgments you drafted and because there is no dispute as to the correctness of the amounts unconditionally tendered.”
On March 13, 2007, Harry Steinberg directed a letter to the court which recites:
*451 “Your Honor:
“I write, as counsel for defendants, to advise the Court, in advance of the March 23, 2007, motion return date, that one of three major issues on defendants’ motion and plaintiffs’ cross-motion has been resolved. Specifically, the parties now agree on the amounts specified in the judgments to be signed. However, a new issue has arisen, whether defendants’ unconditional tender of the full amounts due in the judgments drafted by plaintiffs cuts off the running of interest. Based upon the cases cited below, defendants will argue that their unconditional tender cut off the running of interest.”
The matter was returnable for oral argument before the court on March 23, 2007. Following oral argument, the court reserved decision.
Issues Presented
The issues to be resolved by the court are recited below:
1. Whether defendants are entitled to execution by the court and court clerk of judgments and bill of costs in the Allison and Rutherford matters prior to court approval of the CPLR article 50-B annuity contracts?
2. When the court must approve any annuity contracts purchased by defendants for plaintiffs’ benefit prior to court execution of the proposed judgments and bill of costs?
3. Whether the unconditional tender of $9.1 million by defendants to plaintiffs’ counsel in the Allison and Rutherford matters, as reflected in the March 7, 2007 Calarco letter, tolled interest from accruing on the tendered amounts?
4. Whether defendants are entitled to a satisfaction of judgment upon the payment of the lump-sum payments, past due periodic payments, attorney’s fees, and interest due plaintiffs, and the purchase of annuity contracts for future sums due plaintiffs under CPLR article 50-B upon approval of said annuity contracts by the court?
These issues are examined below.
The Execution of the Judgments and Bill of Costs
The statutory basis for determining what judgment is to be entered on a verdict in an action to recover damages for personal injury is set forth in CPLR 5041. In relevant part, the provision provides:
*452 “§ 5041. Basis for determining judgment to be entered
“In order to determine what judgment is to be entered on a verdict in an action to recover damages for personal injury, injury to property or wrongful death under this article, and not subject to article fifty-A of this chapter, the court shall proceed as follows: . . .
“(e) With respect to awards of future damages in excess of two hundred fifty thousand dollars in an action to recover damages for personal injury, injury to property or wrongful death, the court shall enter judgment as follows:
“After making any adjustment prescribed by subdivision (b), (c) and (d) of this section, the court shall enter a judgment for the amount of the present value of an annuity contract that will provide for the payment of the remaining amounts of future damages in periodic installments. The present value of such contract shall be determined in accordance with generally accepted actuarial practices by applying the discount rate in effect at the time of the award to the full amount of the remaining future damages, as calculated pursuant to this subdivision. . . . The court, as part of its judgment, shall direct that the defendants and their insurance carriers shall be required to offer and to guarantee the purchase and payment of such an annuity contract. Such annuity contract shall provide for the payment of the annual payments of such remaining future damages over the period of time determined pursuant to this subdivision.” (Emphasis added.)
Defendants maintain the right to have the court and court clerk execute the proposed forms of judgments and bill of costs. (See Steinberg exhibits A, B.) There is no substantive disagreement between plaintiffs’ and defendants’ counsel concerning the terms of the proposed forms of judgments and bill of costs. (See Rimmler affidavit exhibits A, B.) However, plaintiffs maintain defendants are not entitled to have the court execute any judgment or bill of costs until such time as the annuity contracts procured by defendants for plaintiffs are approved by the court.
The provisions governing annuity contracts under CPLR article 50-B are recited in CPLR 5042 and 5043. In relevant part, the provisions provide:
*453 “§ 5042. Form of security
“Security authorized or required for payment of a judgment for periodic installments entered in accordance with this article must be in the form of an annuity contract, executed by a qualified insurer and approved by the superintendent of insurance pursuant to section five thousand forty-nine of this article, and approved by the court” (Emphasis added.)
“§ 5043. Posting and maintaining security “(a) If the court enters a judgment for periodic installments, each party liable for all or a portion of such judgment shall separately or jointly with one or more others post security in an amount necessary to secure payment for the amount of the judgment for future periodic installments within thirty days after the date the judgment is entered. A liability insurer having a contractual obligation and any other person adjudged to have an obligation to pay all or part of a judgment for periodic installments on behalf of a judgment debtor is obligated to post security to the extent of its contractual or adjudged obligation if the judgment debtor has not done so.
“(b) A judgment creditor or successor in interest and any party having rights may move that the court find that security has not been posted and maintained with regard to a judgment obligation owing to the moving party. Upon so finding, the court shall order that security complying with this article be posted within thirty days. If security is not posted within that time and subdivision (c) of this section does not apply, the court shall enter a judgment for the lump sum as such sum is determinable under the law without regard to this article.” (Emphasis added.)
The current lump-sum amounts due plaintiffs Allison and Rutherford by defendants are calculated the same in both plaintiffs’ and defendants’ judgments and bill of costs (Stein-berg affirmation, exhibits A, B; Rimmler affidavit, exhibits A, B). Similarly, the terms of the plaintiffs’ and defendants’ proposed judgments and bill of costs shows no substantive difference with respect to each of plaintiffs’ and defendants’ proposed provisions concerning the obligation of defendants and their insurance carrier to offer and guaranty the purchase and payment of the annuity contracts.
*454 The court has reviewed the interplay among CPLR 5041 (e), 5042 and 5043 (a) and (b). The court would note that defendants’ proposed judgments and bill of costs recite the direction of the court that defendants and their insurance carriers shall be required to offer and guaranty the purchase and payment of an annuity contract. Pursuant to CPLR 5042, “[s]ecurity authorized or required for payment of a judgment for periodic installments entered in accordance with this article must be . . . approved by the court.” Plaintiffs and defendants differ on the issue of the timing of the court approval of the annuity contracts. Plaintiffs contend the court must approve the form of security prior to execution of the judgment. Defendants maintain the court approval of the annuity contract may come after the judgment has been entered.
The provisions of CPLR 5043 (a) and (b) control the timing issue with respect to court approval of the annuity contracts. Pursuant to the terms of CPLR 5043 (a), defendants are required to post security in an amount necessary to secure payment for the amount of the judgment for future periodic installments within 30 days after the date judgment is entered.
In Rohring v City of Niagara Falls (212 AD2d 320, 325 [4th Dept 1995]), the Court in rejecting the trial court’s imposition of separate guarantees of payment of a judgment by defendants, where an annuity contract was purchased, addressed several issues relevant to the determination of this motion. The relevant portion of the Court’s decision states (at 322-325):
“Although it is clear that the legislation was intended to address the concerns of defendants and to ensure the availability of liability insurance by providing for the structuring of judgments with respect to awards of future damages in excess of $250,000 (see, CPLR 5041 [e]), the Legislature was also cognizant of the need to provide adequate security for the payment of the periodic installments required by the judgments for the period of time over which such periodic payments were to be made. It did so by requiring defendants and their insurance carriers to purchase an annuity contract executed by a qualified insurer approved by the Superintendent of Insurance and to guarantee the payments thereunder (CPLR 5041 [e]; 5042, 5043). The Legislature also provided that, in the event payment was not made in a timely fashion, a plaintiff could apply to the court for an order requiring pay *455 ment of the outstanding payments in a lump sum without reduction to present value (CPLR 5044). . .
“The court’s structured judgment, entered August 6, 1992, tracked the language of article 50-B and required Niagara Falls and its insurance carrier, State Fund, to offer and guarantee the purchase and payment of an annuity contract from ‘an annuity company and/or other company, which is A+ rated by Best’s [an insurance rating publication], which is designated as qualified by the Superintendent of Insurance, Department of the State of New York, and which has been approved and consented to by the Court to guarantee the payment of such an annuity contract’. Thereafter, State Fund purchased an annuity contract from Continental Assurance Company (Continental), a company with an A+ Best’s rating, and authorized by the State Insurance Department to write annuities under article 50-B. Plaintiff objected to the annuity contract on the grounds that it was not approved by the Superintendent of Insurance pursuant to CPLR 5042; Niagara Falls was not an owner of the contract; Niagara Falls and State Fund had not guaranteed the payments thereunder; and the contract prohibited acceleration of payments, although CPLR 5046 (a) and (b) provide for acceleration by court order in the case of hardship. By order to show cause, plaintiff moved for an order requiring defendants ‘to post and maintain security in the form [of] a court-approved annuity contract which meets the requirements of CPLR Article 50-B.’ . . .
“The court found that the annuity contract complied substantially with its earlier directives, but that the guarantees furnished by Niagara Falls and State Fund were inadequate because the officers who executed the documents did not have the proper authority to do so, and because Niagara Falls’ guarantee was not ‘appropriately funded as required by law.’ By order entered February 8, 1995, the court denied defendants’ motion to approve the annuity contract and directed the entry of a lump-sum judgment in favor of plaintiff for the full amount of damages awarded by the jury. . . .
“The court erred in requiring separate guarantees *456 from Niagara Falls and State Fund. The law requires only that the judgment direct defendants and their insurance carriers to purchase an annuity contract and to guarantee its payment (CPLR 5041 [e]). The annuity contract has been purchased. The judgment entered August 6, 1992 incorporates the language of the statute requiring the purchase of an annuity and the guarantee of payment. Thus, the required guarantee of payment is imposed upon Niagara Falls and State Fund by the mandate of the judgment; no separate instrument or further procedure is required to implement that guarantee. Therefore, both requirements were met.” (Emphasis added.)
In light of Rohring, the court determines defendants’ proposed judgments and bill of costs conform to the statutory requirements of CPLR 5041 (e). (Steinberg affirmation, exhibits A, B.) Accordingly, defendants are entitled to court execution of the proposed judgments and bill of costs. The court holds the annuity contracts required of defendants for future payments must be submitted by defendants for court approval within 30 days after the date the judgment is entered. (CPLR 5043 [a].) Since there is no substantive difference between plaintiffs’ or defendants’ proposed forms of judgments and bill of costs, the court will execute defendants’ proposed form of judgments and bill of costs.
The Tolling of Interest
By letter dated March 7, 2007, James Calarco, claims specialist of Fireman’s Fund as insurer for defendants, unconditionally tendered 10 checks totaling approximately $9.1 million to plaintiffs’ counsel for (a) lump-sum payments, (b) past due periodic payments, (c) interest, and (d) attorney’s fees.
In a letter dated March 8, 2007, Debra A. Norton, Esq., on behalf of the Paul William Beltz, P.C. firm, returned the 10 checks tendered by Fireman’s Fund asserting that the nine percent interest pursuant to CPLR 5002 and 5003 continued to run for the reasons recited in her letter. In substance, plaintiffs maintain that until such time as the defendants complied with the provisions of CPLR 5041, 5042 and 5043 affecting 50-B payments, there could be no judgment and interest continued to run on the payments covered by the March 7, 2007 tender. On the present record, the court determines that Mr. Calarco’s let *457 ter of March 7, 2007 on behalf of Fireman’s Fund, as insurer for defendants, enclosing the 10 checks totaling $9.1 million constitutes an unconditional tender by defendants of the sums due both plaintiffs for (a) lump-sum payments, (b) past due periodic payments, (c) accrued interest, and (d) attorney’s fees. (O’Rourk v Berner, 249 AD2d 975, 976 [4th Dept 1998].)
Plaintiffs maintain that in both CPLR article 50-A and 50-B judgments,, the law is well established that interest owed on a judgment is not tolled until such time as all money due on the judgment is tendered and an annuity contract is delivered. (Johnston v Joyce, 192 AD2d 1124 [4th Dept 1993].) Although plaintiffs correctly recite the general proposition of Johnston, the case does not address the effects of a tender of the portion of a lump-sum payment due under the judgment upon the tolling of interest, the effect of procurement of the annuity contracts, nor the right of the tendering party to receive a satisfaction of judgment.
In Love v State of New York (78 NY2d 540, 544 [1991]), the Court of Appeals stated:
“Contrary to the State’s contention, interest is not a penalty. Rather, it is simply the cost of having the use of another person’s money for a specified period (see, Siegel, NY Prac § 411, at 623 [2d ed]). It is intended to indemnify successful plaintiffs ‘for the nonpayment of what is due to them’, and is not meant to punish defendants for delaying the final resolution of the litigation.” (Citation omitted.)
In Pellegrino v State of New York (133 Misc 2d 888 [Ct Cl 1986], affd 139 AD2d 502 [2d Dept 1988]), the court recited (at 889-890):
“Every money judgment bears interest from the date of its entry. (CPLR 5003.) In the event of an appeal or an amendment to the judgment, interest runs from the date of entry of the original judgment and continues until the judgment is satisfied.
“The award of postjudgment interest is a penalty for delayed payment of the judgment. Liability for subsequently accruing interest can be avoided where the judgment debtor makes an unconditional tender of payment to the creditor or deposits the amount with the court.” (Citations omitted and emphasis added.)
In Wireman v Reith (220 AD2d 582, 583 [2d Dept 1995]), the principle is stated thus: “The court must recalculate the amount *458 of postjudgment interest owed to the plaintiffs. Each of the four checks tendered by the two insurance companies constituted unconditional tender, which terminated the running of post-judgment interest on the amounts paid.”
In Meiselman v Allstate Ins. Co. (197 AD2d 561 [2d Dept 1993]), the Court held that the trial court properly concluded that the defendant’s unconditional tender of the judgment amount stopped the running of postjudgment interest pursuant to CPLR 5003.
In O’Rourk v Berner (249 AD2d 975, 976 [4th Dept 1998]), in addressing the issue of tolling of prejudgment interest, the Court held:
“Supreme Court erred in awarding prejudgment interest pursuant to CPLR 5002 after defendants made an unconditional tender of the verdict amount with interest on October 10, 1996. Upon the unconditional tender of the verdict amount with interest, defendants no longer had the use of plaintiff’s money, and plaintiff received what was due her.” (Citations omitted.)
In Rohring v City of Niagara Falls (84 NY2d 60, 67 [1994]), the Court in reviewing the statutory scheme of CPLR articles 50-A and 50-B recites:
“Because the statute is patently ambiguous and is impossible to apply as written, we turn for guidance to the underlying intent of the statutory scheme. Articles 50-A and 50-B are technical administrative schemes intended to regulate and structure payment, and they should not be construed in such a way as to increase the underlying liability owed by defendants. Plaintiffs are entitled to be made whole, as determined by the trier of fact, but have no right to overcompensation.”
Defendants, in the Calarco letter of March 7, 2007, made an unconditional tender of $9.1 million to plaintiffs’ counsel. At that time, plaintiffs’ counsel had several options available with respect to defendants’ tender, including:
1. Acceptance of the tender.
2. Acceptance of the tender with a reservation of rights.
3. Depositing the tendered checks with the court.
4. Rejection of the tender.
On March 8, 2007, plaintiffs’ counsel chose to reject the tender. The court determines defendants’ March 7, 2007 uncondi *459 tional tender of $9.1 million had the effect of tolling interest on said sums covered under the tender. The court further determines no additional interest is owed to plaintiffs on the unconditional amounts tendered by defendants as reflected in the Calarco letter of March 7, 2007. (O’Rourk v Berner, supra at 976.)
Interest on the 50-B Annuity Contracts
In Mr. Calarco’s letter of March 7, 2007 to plaintiffs’ counsel, he addresses the issue of annuity payments thus:
“In order to provide the annuity payments in the amounts and time frames listed in the two judgments you proposed, Fireman’s Fund has locked in the rates for the contracts and we have sent our checks to the life carriers [so] that the monthly payments can be made, starting on the April 9, 2007, start date listed in your judgment papers. Because there is complete agreement as to the payment terms of the judgment, the life insurance annuity providers will start releasing the periodic payments to plaintiffs on April 9, 2007, while we await the court’s approval of the form of the contracts pursuant to CPLR 5042. Of course, if the court orders any alterations or amendments to the forms of the annuity contracts, we will comply with those orders and make any retroactive payments necessary.” (Emphasis added.)
On March 30, 2007, counsel for defendants wrote plaintiffs’ counsel, Anne Rimmler, Esq., to advise her of the following:
“I write to advise you that, since Justice Makowski has not yet ruled on the pending motion and cross-motion and since the time continues to run, defendants have instructed the annuity providers to make the first annuity payments specified in the two judgments you drafted, which payments are required to be made on April 9, 2007. The payments will be sent directly to the plaintiffs’ home addresses that you provided.
“Pursuant to the terms of the judgments you drafted, the first payments will be as follows:
“Timothy Allison: $32,898.16 (separate checks for each of the four categories of damages)
*460 “Jeffrey Rutherford: $7,703.58 (separate checks for each of the three categories of damages).”
On the record before the court, there is no disagreement between plaintiffs’ and defendants’ counsel as to the proposed sums to be paid to Allison and Rutherford under the annuity contracts. Accordingly, the court presumes that said annuity contract sums including any interest due thereon have been correctly calculated by Fireman’s Fund. As of the date of this decision, the court is uncertain whether payments referenced in the letter of March 30, 2007 have, in fact, been sent to plaintiffs Allison and Rutherford. On the present record, the court cannot pass on the effect, if any, of either Allison’s or Rutherford’s negotiation of the annuity checks. The court awaits advice from plaintiffs or defendants as to whether the April 9, 2007 annuity checks have been negotiated by plaintiffs.
The court determines that in the absence of any controversy as to the calculation of the sums due plaintiffs under the annuity contracts, no additional interest is due under the annuity contracts under CPLR article 50-B. Should the court modify or reject the annuity contracts, the court can recalculate any interest due plaintiffs for said sums. This issue will be revisited by the court when the annuity contracts are submitted to it for court approval. (CPLR 5042, 5043.)
Satisfaction of Judgments
Defendants maintain that should the judgments to be signed by the court be entered with the Clerk of Erie County, then they are entitled to a satisfaction of judgment. (CPLR 5020.) In relevant part, CPLR 5020 provides:
“§ 5020. Satisfaction-piece
“(a) Generally When a person entitled to enforce a judgment receives satisfaction or partial satisfaction of the judgment, he shall execute and file with the proper clerk pursuant to subdivision (a) of section 5021, a satisfaction-piece or partial satisfaction-piece acknowledged in the form required to entitle a deed to be recorded, which shall set forth the book and page where the judgment is docketed. A copy of the satisfaction-piece or partial satisfaction-piece filed with the clerk shall be mailed to the judgment debtor by the person entitled to enforce the judgment within ten days after the date of filing.”
*461 In relevant part, CPLR 5021 provides:
“§ 5021. Entry of satisfaction
“(a) Entry upon satisfaction-piece, court order, deposit into court, discharge of compounding joint debtor. The clerk of the court in which the judgment was entered or, in the case of a judgment of a court other than the supreme, county or a family court which has been docketed by the clerk of the county in which it was entered, such county clerk, shall make an entry of the satisfaction or partial satisfaction on the docket of the judgment upon:
“1. the filing of a satisfaction-piece or partial satisfaction-piece; or
“2. the order of the court, made upon motion with such notice to other persons as the court may require, when the judgment has been wholly or partially satisfied but the judgment debtor cannot furnish the clerk with a satisfaction-piece or partial satisfaction-piece . . . .”
Defendants maintain an entitlement to a satisfaction piece to cover both the cash payments and annuity obligation should the judgments and bill of costs be entered with the Erie County Clerk. Plaintiffs maintain that defendants are not entitled to a full satisfaction piece until all sums due under the judgments, including payment of all sums due under the annuity contracts, are actually paid in full.
Defendants EGIDA and NFTA are public authorities. Ciminelli is a private real estate development firm. All defendants maintain that in the absence of receipt of a full satisfaction piece, the presence of a continuing judgment hen will impair its respective creditworthiness and bonding capacity.
On the present record, defendants, through their insurer, Fireman’s Fund, in their letter of March 7, 2007, unconditionally tendered the lump-sum payment, periodic past due payments, accrued interest and attorney’s fees due plaintiffs. Minimally, defendants would be entitled a partial satisfaction on payment of the $9.1 million for the lump-sum payment, periodic past due payments, accrued interest and attorney’s fees. (CPLR 5020, 5020-a, 5021.) The parties’ dispute concerning issuance of a full satisfaction of judgment arises solely within the context of annuity payments due plaintiffs.
*462 The court has reviewed the provisions of CPLR article 50-B with emphasis on sections 5042, 5043 and 5044. The provisions of CPLR 5044 provide:
“§ 5044. Failure to make payment “If at any time following entry of judgment, a judgment debtor fails for any reason to make a payment in a timely fashion according to the terms of this article, the judgment creditor may petition the court which rendered the original judgment for an order requiring payment by the judgment debtor of the outstanding payments in a lump sum. In calculating the amount of the lump sum judgment, the court shall total the remaining periodic payments due and owing to the judgment creditor, as calculated pursuant to subdivision (e) of section five thousand forty-one of this article, and shall not convert these amounts to their present value. The court may also require the payment of interest on the outstanding judgment.”
In Johnston v Joyce (192 AD2d 1124 [4th Dept 1993]), the Appellate Division generally addressed the question of whether the issuance of an annuity contract satisfies a defendant’s payment obligation. The Court stated (at 1126):
“The structured judgment provision of CPLR 5031 affects only the manner in which defendant may satisfy the judgment. Once the verdict was returned, plaintiff became entitled to interest on her award until such time as defendant satisfies it by paying it in its entirety or by paying the lump sum provided in the statute and delivering an annuity contract for the payment of periodic installments (see, CPLR 5032).”
The Johnston case does not address the issue of whether defendant is entitled to a court satisfaction pursuant to CPLR 5021 (b) nor does the opinion address certain issues raised by CPLR 5042, 5043 and 5044.
In analyzing the issue from an economic perspective, it is clear that defendants’ tender of March 7, 2007 compensates plaintiffs for lump-sum payments, periodic past due payments, accrued interest, and attorney’s fees. The issue before the court is whether, upon court approval of defendants’ annuity contracts pursuant to CPLR 5042, defendants are entitled to receive a full satisfaction of judgment. On the present record, the court determines that plaintiffs’ economic *463 interests under article 50-B are protected by issuance of a court approved annuity. Should there be a default in annuity payments, plaintiffs are protected by the provisions of CPLR 5043 and 5044. The court determines that (1) upon defendants’ tender to plaintiffs’ counsel of all lump-sum payments, periodic past due payments, accrued interest, and attorney’s fees, which sums shall be calculated consistent with the Fireman’s Fund tender of March 7, 2007, and (2) the court’s approval of the annuity contracts, that the court will issue defendants a full satisfaction of judgment. (CPLR 5021 [b].) Such court-issued satisfaction of judgments are contemplated to be subject to the provisions of CPLR 5043 and 5044.
Court Determination
For the reasons recited herein, the court determines:
1. Defendants are entitled to have the court and court clerk execute the proposed judgments and bill of costs prepared by defendants.
2. Upon execution by the court and court clerk, said judgments and bill of costs may be entered with the Erie County Clerk.
3. Defendants are required to submit the proposed annuity contracts for plaintiffs Allison and Rutherford to the court for approval within 30 days of the date the judgments are entered. (CPLR 5043.)
4. By letter dated March 7, 2007, Fireman’s Fund made an unconditional tender of 10 checks totaling $9.1 million to plaintiffs’ counsel, which tender was rejected. Such tender was made to pay plaintiffs’ lump-sum payments, past due periodic payments, accrued interest, and attorney’s fees. The unconditional tender rejected by plaintiffs’ counsel on March 8, 2007 tolls or stays the running of interest on said sums. Defendants are entitled to issue or reissue of the aforementioned checks to plaintiffs’ counsel in the amounts reflected in the March 7, 2007 letter of Mr. Calarco.
5. In the absence of any issue concerning defendants’ calculation of annuity payments due plaintiffs and subject to the court’s approval of said annuity contracts, no further interest is presently due under the annuity contracts. This issue is subject to judicial review at the time of court approval of said annuity contracts. (CPLR 5043.)
6. Upon defendants’ payment of the lump-sum, past due periodic payments, accrued interest, and attorney’s fees as *464 calculated in the Calarco letter of March 7, 2007 and court approval of the annuity contracts, the court will issue defendants full satisfaction of judgments in the Allison and Rutherford matters. (CPLR 5021 [a] [2].)