In the Matter of SAMUEL MARKEWICH, an Attorney, Respondent.

First Department, June 4, 1920.

**Attorney at law censured — public criticism of judicial decision — obligations of attorneys to court.**

Attorney at law, who was also an assistant district attorney for the county of New York, censured for his contempt of a Federal court by stating at a public meeting that a judicial decision of a judge of said court was not honestly rendered but was made in the interest of certain traction companies, and that if the people do not approve of such decision they should endeavor to impeach the judge, etc.,

It is the duty of an attorney, especially one holding such public office, to refrain from unfounded public accusations tending to arouse passion and to excite unrest and to destroy confidence in judicial integrity.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie,* for the petitioner.

*William M. K. Olcott* of counsel [*Neilson Olcott* with him on the brief; *Olcott, Bonynge, McManus & Ernst,* attorneys], for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar in February, 1903, at a term of the Appellate Division, First Department, and was practicing in said department, and was an assistant district attorney of the county of New York at the time he committed the acts complained of.

The petition charges that on or about March 20, 1919, a bill in equity in an action against the New York City Railways Company, praying for the marshaling and conservation of the assets of the New York Railways Company for the benefit of creditors and for the appointment of a receiver of such assets was filed in the United States District Court for the Southern District of New York, which court had and assumed jurisdiction of the cause and thereafter appointed Job E. Hedges, receiver of the assets of said railways company; that among the assets thereof were certain rights in and to several lines of street surface railways, commonly known as storage battery car lines, in the city of New York; that on September 12, 1919, upon the petition of the said receiver, the United States District Court for the Southern District of New York made an order directing the receiver to discontinue the operation of the said storage battery car lines until the further order of the court; that on September 18, 1919, the respondent with knowledge of the pendency of said action and the proceedings referred to, in the course of a speech made by him at a public meeting of citizens in Public School No. 62, in a community served by said storage battery lines, after referring to the situation and conditions which would arise upon a discontinuance of said storage battery lines, said, in substance, as follows: " The people have been discriminated against. They are being trampled upon and the traction interests have supreme control of the court and of everybody else. The decision regarding the withdrawal of the storage battery cars was in the interest of the traction trust. I am in favor of the adoption of the recall of Judges. Any Judge who discriminates in favor of the railroads and against the common people does not deserve to be recalled. Recalled would be entirely too mild a remedy. What ought to be done was what was done in the days of Charles II. The noose ! The noose ! In those days they hung Judges. If that cannot be accomplished at this moment, impeachment is the next step and Congress should impeach him, and we should ask Congress to impeach him. We should petition Congress with that purpose in mind. A Judge who works for public service corporations instead of the public, should be impeached."

On October 3, 1919, the United States Attorney for the Southern District of New York filed an information in the United States District Court for the Southern District of New York against the respondent, in which the facts above set forth were recited at length and in which it was also alleged that the said remarks hereinbefore quoted tended and were calculated and intended by the said Samuel Markewich to influence the court in its consideration of the said cause of the American Brake Shoe & Foundry Company, plaintiff, v. New York Railways Company, defendant; the Farmers Loan & Trust Company, complainant, against New York Railways Company; Job E. Hedges, as Receiver of New York Railways Company; and the American Brake Shoe & Foundry Company, defendants, then and still pending in this court; to intimidate the court in the exercise of its lawful functions, to incite and cause public disregard of and resistance to the said order and other orders of this court in the said cause; to obstruct the enforcement thereof, and to impede the administration of justice in said cause and in other causes in said court; and generally to bring said court into public ridicule, contumely and contempt, and to destroy public confidence in said court and in the judicial system of the United States.

The respondent was thereafter arraigned before the Hon. JULIUS M. MAYER, one of the judges of the United States District Court for the Southern District of New York, and he then pleaded guilty to the charges made against him in the information filed.

On October 8, 1919, Judge MAYER filed an opinion in which he directed that the respondent be severely censured for his contempt of court and in which among other things he said: " The rights to discipline the members of the Bar rests with Courts, but it has been the established practice that the Bar itself shall first investigate acts of a member of the profession claimed to be violative of his duties and obligations. It is deemed proper, therefore, that the conduct of the defendant should be brought to the attention of the Bar and to that end the United States Attorney is instructed to transmit a copy of this record to the Association of the Bar and to the New York County Lawyers Association."

In accordance with this instruction of the court, the United

States Attorney brought the matter to the attention of the Association of the Bar, as a result of which this proceeding was instituted.

The respondent having interposed an answer, and accompanying affidavits, which raised an issue of fact as to the precise language used by him in his speech, this court made an order of reference to the Honorable Charles F. Brown, formerly a justice of the Supreme Court and a member of the Court of Appeals, Second Division, to take the testimony and report with his opinion thereon. After a full hearing the referee has filed his opinion, in which he states:

" On September 12th, 1919, the United States District Court for the Southern District of New York, Hon. Julius M. Mayer, presiding, made an order directing Job Hedges, Receiver of the New York Railways Co., who had theretofore been appointed Receiver of said railways by said District Court, to discontinue the operation of certain lines of cars which were operated in that part of the City of New York which lies south of Grand Street and east of the Bowery and which is popularly known as ' Lower East Side.'

" On September 18th, 1919, at 8.30 P. M. a meeting called by the ' Bridge District Community Council' was held in the auditorium of Public School No. 62 at Hester and Norfolk Streets, New York City, to discuss the problems the community would have to face when the cars running along Madison Street were discontinued. Between two and three hundred people attended such meeting. Such meeting was addressed by several speakers, some of whom were men, and some of whom were women, among whom was the respondent. The substance of the remarks of such speakers (excepting only Mr. Job Hedges) was a severe criticism of the United States District Court for making the order aforesaid and directing the discontinuance of the cars.

" The respondent addressed said meeting after several other persons had spoken. In the course of his remarks he said:

" ' The decision of Judge MAYER was not honestly rendered, inasmuch as it was in favor of the traction ring and against the interests of the people; that it was a dishonest decision; that a judge who decided in favor of the traction ring and

against the interests of the people deserved to be impeached —
that Judge MAYER was a fit subject for impeachment.'

" In substance he said that in such a case as he was discussing
a protest meeting was useless; that if the people did not
approve of the Judge's decision a better way was to impeach
him — that impeachment was the only remedy they had;
and he urged the people whom he was addressing to write
or petition their Congressman to institute impeachment
proceedings against Judge MAYER.

" He further said in substance that it was fortunate that
the Constitution provided for the impeachment of judges, as
otherwise the people might resort to the noose as they did at
the time of Charles II.

" I find specifically that the respondent did not say as
is alleged at folio ten of the petition: ' What ought to be
done was what was done in the day of Charles II. The noose !
The noose ! In those days they hung judges. If that cannot
be accomplished at this moment, impeachment is the next step.'

" That he did not say, as he alleges at folio seven of his
affidavit filed with and annexed to his answer: ' the order
discontinuing the cars is intended to be used by the traction
companies as a noose around your neck to choke you into
submission to pay higher fares.'

" It is difficult to determine precisely the exact language
which the respondent used in his address, or the exact mean-
ing which he intended to convey to his audience, as the wit-
nesses sworn before me differ most materially as to what
respondent said.

" The conclusion which I have above stated, however, is
in my opinion supported by the greater weight of testimony.

" The impression created upon some of the audience by the
respondent's speech, however, was that he had advocated
hanging Judge MAYER, and at the close of his address there
was great excitement, and several persons urged upon the
respondent to do something, or say something to correct the
impression his remarks had made.

" Before the adjournment of the meeting the respondent
again addressed it and said in substance that he did not in
the remarks he had made intend to offend Judge MAYER or
the Federal Court, and that he had the highest respect for

Judge MAYER and the court. He repeated what he had said about impeachment.

" The respondent when he addressed the meeting aforesaid was an Assistant District Attorney of the County of New York. He had been a member of the Bar of the State of New York for about seventeen years, and of the Bar of the Federal District Court for about fifteen years.

" In my opinion the remarks made by the respondent at the meeting aforesaid, which I have quoted, were most improper for a lawyer to utter. A lawyer's duty is at all times and upon all occasions to show respect for the decisions of the Courts, and he should always array himself in favor of the maintenance of law and order.

" In stating to the meeting which he addressed that ' the decision of Judge MAYER was dishonest,' and that ' he deserved to be impeached,' he substantially charged Judge MAYER with corrupt action, although he had no knowledge of any fact upon which to base such a charge.

" His remarks, which I have quoted above, were calculated to arouse in the audience which he addressed a feeling of contempt for the Federal Court, and to inflame their minds against the Judge who had made the order for the discontinuance of the operation of the cars."

Upon a careful examination of the testimony, we approve of the findings and conclusions of the learned referee. While the respondent has been found not to have used language suggesting or advocating the hanging of the judge who had made an unpopular order, yet his admitted language was so offensive, unfounded and improper as to require action by this court. The respondent was not only a member of the bar, but an assistant district attorney of the county, and as such officer there rested upon him the additional official obligation of respect toward the courts. It was his duty to refrain from unfounded public accusation tending to arouse passion, to excite unrest and to destroy confidence in judicial integrity, especially at a time and place and before an audience aroused to excitement and dissatisfaction in regard to the judicial order. It is urged upon us that in considering what punishment should be imposed for his undisputed unprofessional conduct, we should take into consideration his personal good

character and previous useful public service. He had served as a Special Attorney-General in the prosecution of election frauds, he was for three years legal assistant to the Legislative Bill Drafting Commission, he was appointed a deputy assistant district attorney on January 1, 1916, and promoted to be assistant district attorney on January 1, 1918. He devoted considerable time to the upbuilding of charitable and educational institutions in his community, and he has worked hard for the Americanization of foreigners in his section of the town, served upon the Draft Boards, and was active in the Liberty Loan drives. The judges of the criminal courts before whom he has practiced and members of the bar and leaders in political, social and civic affairs have testified as to his good character. These matters make his conduct the more reprehensible. The better the character and the higher the standing of a member of the bar, the more effective and influential are his unjust criticisms. On being arraigned before the United States District Court respondent expressed his profound regret for what he had uttered, as he said, in the heat of oratory, withdrew absolutely all suggestion of improper motive inducing the judge's order, stating: " My entire life on the East Side was devoted to advocating and practicing respect for law and order and during my practice at the Bar, whether representing a private client or the State of New York, I have always entertained the highest respect for our courts, and never yet in the seventeen years of my practice at the Bar has there been occasion for me to answer for any disrespectful statement about our courts. So that it is with a deep sense of regret that at this time I find that I owe an apology to the Court. I say ' at this time,' advisedly; because now is the time more than ever, when the integrity and respect for the Courts must be upheld by all good citizens. For it is in times like these, when disorder shows its threatening hand that the Courts stand out as the bulwark of orderly and organized society; and unfair and unjust criticism of the courts and Judges at this time above all times cannot be productive of any good." He was asked by the court: " Have you any idea in your mind, even remotely, that this Court has failed to render its decision honestly and according to its best judgment? " He answered: " I have not."

" The Court: Then the statement does not represent your own reflected state of mind? Mr. Markewich: Not only that, but if your Honor please, as I have said, after Judge HEDGES spoke, when I had a chance to reflect, I rose and said very distinctly, ' I do not want any one in the audience to leave with the reflection that I entertain anything but the most implicit faith in your Honor's honesty and integrity.' "

The learned United States District Court in its opinion made part of this record said: " In the case at Bar, defendant has made the fullest apology which words can convey. The publicity of the proceeding, the humiliation which has come upon him both as a citizen and a public officer, the great regret which I am satisfied he genuinely feels, have measured out to him a punishment severe within itself. He has frankly stated that he has learned a lesson bitterly taught and fine or imprisonment will do no more. As it is, the files of this Court will permanently contain the record of his wrongful conduct — an ever unhappy reminder. In view of his contrite attitude and his complete apology, it will meet the ends of justice that his conduct, so far as concerns his contempt of court, be severely censured and such censure is herewith administered."

Charged as this court is with the duty of supervising the professional conduct of its officers, the members of its bar, we cannot overlook the serious character of the offense of which respondent has been found guilty. We can add little to what has been said by the learned referee and the judge of the United States District Court. We trust respondent is sincere and has indeed learned his lesson. In view of his character, previous conduct and public service, and his openly expressed contrition and apology, we are of the opinion that the ends of justice will be satisfied with the censure of this court which is hereby administered.

DOWLING, SMITH, PAGE and GREENBAUM, JJ., concur.

Respondent censured. Settle order on notice.