Stallworth v Lodi Inc. (2025 NY Slip Op 51508(U))

[*1]

Stallworth v Lodi Inc.

2025 NY Slip Op 51508(U)

Decided on September 24, 2025

Civil Court Of The City Of New York, Kings County

Roper, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 24, 2025
Civil Court of the City of New York, Kings County

Patricia Stallworth, Plaintiff,

against
Lodi Inc., A.B.E.S. CONTRUCTION INC. and JEFFERSON & SONS, LLC, Defendants.

Index No. TS-300066-19/KI

Liakas Law, P.C., New York, for Plaintiff.
Biolsi Law Group, New York, for Defendant.

Sandra E. Roper, J.

This Honorable Court Decides and Orders after oral arguments held on August 20 and August 27, 2025, Plaintiff's Order to Show Cause to enter judgment pursuant to CPLR § 5041 is hereby GRANTED Nunc Pro Tunc as of May 16, 2024.
"May the Almighty grant that the cause of truth, justice, and humanity shall in no wise suffer at my hands."[FN1]

Ab initio, there is no dispute between parties as well as This Court that the initial and subsequent stated reason for rejections of the entry of judgment by the court's judgment clerk on May 16, 2024 and August 13, 2024 were in error: "NEED AN ANNUITY CONTRACT, EXECUTED BY A QUALIFIED INSURER AND APPROVED BY THE SUPRINTENDENT OF FINANCIAL SERVICES. PLEASE SEE CPLR 5041E AND CPLR 5042" (affirmation of defendant's counsel, exhibit D).
Indeed, Defendant quite aptly agreed and bolstered Plaintiff's argument that the entry of judgment must precede any purchase of an annuity contract for periodic payments as likened to placing the cart before the horse.
"In light of Rohring, the court determines defendants' proposed judgments and bill of costs conform to the statutory requirements of CPLR 5041 (e). Accordingly, defendants are entitled to court execution of the proposed judgments and bill of costs. The court holds the annuity contracts required of defendants for future payments must be submitted by defendants for court approval within 30 days after the date the judgment is entered" (Allison v Erie County Indus. Dev. Agency, 16 Misc 3d 445, 454 [Sup Ct, Erie County 2007], citing CPLR 5043 [a]).
Defendant's failure to secure such an annuity contract may be ordered to pay outstanding judgment amount in a lump sum upon calculation pursuant to CPLR 5044 (Stewart v NY City Tr. Auth., 56 Misc 3d 611, 615-616 [Sup Ct, Bronx County 2015]).
Without question, there was an error by the court's judgment clerk that enured to the detriment of the Plaintiff, which quite likely retrospectively caused harm to similarly situated plaintiffs. In order to repair and remedy this harmful administrative error upon Plaintiff herein as well as prospectively for the benefit of those similarly situated plaintiffs heretofore or hereafter, This Court, pursuant to the catch all prayer for relief, and for such other and further relief as this Court deems just and proper, ruled, over Defendant's overly zealous repeated objections, that the judgment shall be deemed entered Nunc pro tunc to the initial rejection date of May 16, 2024.
Although not bombastic, not belligerent, nor intemperate, Defendant Counsel with an air of condescension and façade of feigned respect repeatedly accused Presiding Jurist of misconduct in contriving documents or rather, colloquially speaking, lying about documents [*2]retrieved from the court's Universal Case Management System (hereinafter UCMS). Counsel attempted to impeach Presiding Jurist's credibility as if a witness on the stand, while impugning Jurist's integrity, character and judicial reputation. Defendant's Counsel repeatedly refused to accept the documents as true UCMS documents. Upon Counselor's repeated accusations, Jurist summoned reporter to place all further statements on the record. 
"THE COURT: ...Further, the reason that this is being placed on the record is because counselor Jacobson had besmirched this Court's credibility and attempted to impeach her credibility and that the documents that she is referring to is not the Court documents. I can take judicial notice of any court documents that are already in our court system. However, counselor Jacobson made and I will allow you to state your objection again, is that he does not believe that this Judge is reading from papers that are contained within the Court records. That is highly, highly inappropriate, because certainly you have the opportunity to do appeal, but the facts are the facts. The records are the records. [T]his Judge is not asking for counselor Jacobson nor counselor Wolk to accept the credibility of the documents, these particular documents that I am basing my decision on. These are not documents provided by the plaintiff. They're not documents provided by the defendant. These are documents within the Court records.... So that's why this is being placed on the record. So that you can absolutely take your appeal." (tr at 5, line 14, through 6, line 21).
"THE COURT: You can't have annuity before you have a judgment, so absolutely, but nunc pro tunc is the appropriate remedy for the plaintiff who has been prejudiced, unfortunately, and by the Court. I stand in shoes of the Court and I'm sorry that we made that mistake. .... So now I have to give an order and so I hope that once this order is given, it will not happen to another plaintiff. So under those circumstances, I want to make it clear why this is being on the record is because counselor Jacobson, an officer of the Court, has the audacity, the audacity, to besmirch the credibility of a Judge stating I don't know where those papers came from. Excuse me. I'm telling you they come from the Court. I'm not making these papers up. I have no skin in the game here. The only thing I am here for is justice and in the interest of justice, the plaintiff, with a $3,000,000, whatever the amount is, was hurt by our mistake, and I am standing in the shoes of the Court. I am stating we made a mistake. So under those circumstances, I'm attempting the best that I can to remedy that mistake and the only way to do that is to have this nunc pro tunc as to May 16, 2024, and you can object and you can appeal and that's fine. However, this is to the detriment of the plaintiff here. Any comments, anything else? Counselor Jacobson?
"MR. JACOBSON: Yes. I would like to respond your Honor. I am not besmirching the Court. I just want to make it clear, I received an email with documents. They aren't stamped by the Court. There's nothing that shows that the documents were entered by the Court. There's no NYSCEF heading on top. I know the file is not a Supreme Court file on NYSCEF, but there's nothing showing that it was entered by anyone. So I'm merely asking, I just want to make sure that these documents, which were not even part of plaintiff's motion, are a part of the Court record, because I understand, as you mentioned, people sometimes do make mistakes. I'm not perfect. So I just wanted to know how we know these documents came from courthouse, because they're not stamped by the Court, and plaintiff — they're not in plaintiff's motion. Plaintiff doesn't cite to these documents" [*3](tr at 9, line 2 through 9, line 17).
"THE COURT: However, you're besmirching the credibility of the Court, because the Court, this Judge that's before you, this Judge and my court attorney specifically went to our court records. This is the Court. We're not on a street corner, counselor. I am the Court. I'm sitting in the Court. I'm sitting presiding over the Court. I'm telling you — if we were in person, my clerk is right next to me, in whatever part that I'm in, this is a court, and unfortunately, sometimes, counselors forget this is a court that's why I have on a black robe for a reason. I have a clerk for a reason. I have a reporter here. - 
...I'm not asking you to accept the credibility of the papers. I am accepting 
the credibility of the papers. You can make your argument that you believe it's 
sua sponte and it's not pursuant to as a matter of law. I disagree and I stated 
specifically you're wrong. That's number one. You can actually say, oh, well 
this is not the relief that was asked for within and it's not the specific 
relief, but from my standpoint and guess what, it's only my stand point that 
matters, not yours and not counselor Wolk either, but what has really, really 
insensed [sic] this Court is that you stated it several times. How do I know 
that those papers are in the Court. They don't have to be stamped If I am 
telling you it is in the Court records, it's in the Court records. That's the 
bottom line. ....You can make your legal arguments, that's fine. However, you're making a specific argument that this Court and this Court attorney is making up papers. Oh, I don't know if those papers are from the Court. I'm telling you they're from the Court. I'm not asking you. I'm not asking you and you repeated it on the record and I am glad that you did. I'm glad that you did, because yes, yes, you're specifically besmirching my reputation. Do you think I am just going to use papers that are not within the Court and state it? That's why I wanted it on the record. This Court is absolutely insensed [sic] and it takes a lot to incense this particular Judge. So, be that as it may, your objections are noted. You can certainly take it up on appeal, that's fine. I am not one of those judges that's afraid of appeals. An appeal is a good thing. I learn something also. I get instruction also. The clerk who issued these, this erroneous order that the judgment not be — that person is no longer here, however, if she were here, now all the clerks learned something. Maybe they have been doing this for a while, I have no idea. This is the first time it's before me but this should not happen to any other plaintiff again that has a judgment. Is that understood, counselor Jacobson?" (tr at 7, line 8 through 12, line 24).
Presiding Jurist was so indeed flabbergasted that Defendant's Counsel would so boldly and blatantly and repeatedly accuse her of corrupt misconduct in lying about papers contained within UCMS that she would take judicial notice of. He was so insistent that he did not believe Jurist that the papers were from UCMS. Counsel actually stated that he would believe Plaintiff's counsel's papers over that of Jurist's statement that she is reading from UCMS documents. In Jurist's 38 years in the law, she has never encountered counsel actually challenging the veracity of a presiding jurist on the Bench in such a manner. Accusing Jurist of the corrupt misconduct of lying. Indeed, Jurist was quite incensed particularly since Defendant's counsel continued repeatedly to besmirch her personal character as well as impugn her judicial ethics. Most remarkably, Defendant Counsel's firm also previously quite astonishingly admonished Presiding Jurist for failing to supplant her personal pharmaceutical expertise for the evidence adduced at [*4]the jury trial, further impugning Presiding Jurist's ethics.[FN2]

"We are not on a street corner"[FN3]
engaging in disputations. Here we are not equals. It is for this purpose that presiding jurists take an oath and sit in black robes on high to represent reverence for the Law and Justice wielding authorities endowed with wisdom in making Solomonic decisions.[FN4]
Counselors of Law as Officers of The Court similarly take a symbiotic oath in the pursuit of the Law. Being ever so polite superficially in and of itself cannot mitigate the gravity of an Officer of the Court's repeated accusation of corrupt action and judicial misconduct of lying about papers being considered by the Presiding Jurist (see In re Werlin, 170 AD2d 77, 78 [2d Dept 1991]).
"Before the adjournment of the meeting the respondent again addressed it and said in substance that he did not in the remarks he had made intend to offend Judge Mayer or the Federal Court, and that he had the highest respect for Judge Mayer and the court. He repeated what he had said about impeachment.
"The respondent when he addressed the meeting aforesaid was an Assistant District Attorney of the County of New York. He had been a member of the Bar of the State of New York for about seventeen years, and of the Bar of the Federal District Court for about fifteen years.
"In my opinion the remarks made by the respondent at the meeting aforesaid, which I have quoted, were most improper for a lawyer to utter. A lawyer's duty is at all times and upon all occasions to show respect for the decisions of the Courts, and he should always array himself in favor of the maintenance of law and order."(In re Markewich, 192 AD 243, 247-248 [1st Dept 1920]).
For the foregoing reasons, pursuant to CPLR § 5043, Defendants have been Granted 30 days from August 27, 2025 to purchase security annuity contract in an amount necessary to [*5]secure payment for the amount of judgment for future periodic installments; and
it is ORDERED: Judgment Clerk to enter Judgment in the amount of $3,175,000.00 (Three Million, One Hundred and Seventy-Five Thousand Dollars) Nunc Pro Tunc as of May 16, 2024.
This constitutes the opinion, decision, and order of This Honorable Court.
Dated: September 24, 2025
Brooklyn, New York
SO ORDERED:
SANDRA E. ROPER, JCC

Footnotes

Footnote 1: Hon. Michael B. Hyman, Illinois State Bar Association: Bench & Bar, Abraham Lincoln's prayer for judges, 
 https://www.isba.org/sections/bench/newsletter/2016/06/abrahamlincolnsprayerforjudges
 [September 2025]
["It is Lincoln's next sentence that reveals a peril I sometimes feel and succinctly defines the essential character of the noble work that we judges perform. With his customary eloquence Lincoln, invoking divine authority, wrote:

"May the Almighty grant that the cause of truth, justice, and humanity shall in no wise suffer at my hands.

"Here is a message judges can relate to and endorse, universal in its applicability and utility. A reminder of the ever-present risk of calamity inherent in every decision. A declaration of the depth of obligation that each judge swears to uphold. A recognition that decisions can have real, undesirable implications and consequences, rarely intended or predictable.

"Had Lincoln actually served as a judge, deciding questions of legality and justice, of life and liberty, he might have written just such a prayer. (See the accompanying article about Lincoln's service as a judge pro tem).

"Lincoln's words identify three cornerstones, each intricate, compelling, and unwieldly, but ultimately vital, to courts in a free society. In my view, it is the function and purpose of courts, above all else, to advance, defend, and uphold truth, justice, and humanity.

"The 'prayer' also suggests that once a judge renders a decision, what occurs thereafter is hardly certain or within the judge's knowledge. Judges cannot direct the future any more than they can foresee it. Judges can only hope that their rulings elevate rather than impede 'the cause of truth, justice, and humanity.'

"This 'prayer' moves me to be faithful to that which exists in me; to disregard personal sentiment, popular opinion, ideology, or extra-legal considerations in reaching decisions; to make each proceeding as just and fair as possible; to appreciate and respect the human effect of each decision; and to fulfill my responsibilities in a manner that honors truth, justice, and humanity. As Lincoln once said, 'It requires more courage to dare to do right than to fear to do wrong.'"].
Footnote 2: See Stallworth v Lodi Inc., 80 Misc 3d 1229[A], 2023 NY Slip Op 51131[U] [Civ Ct, Kings County 2023] ["Further, Defendant argues that it is the court's failure to have provided it an opportunity to object to back pain and leg pain in the PJI 2:282 charge prior to reading to the jury is harmful reversible error, which caused the jury to render an excessive verdict of $3,175,000. This jurist's trial notes in conjunction with the full trial transcript (in particular page 291) establishes: the jury was released for lunch at 1:45 p.m. and ordered to return at 2:15 p.m.; The reporter and both counsels were in the courtroom by 2:15 p.m.; whereas jury charges were read to the jury from 2:42 p.m. to 2:55 p.m.. Thus, both parties had between 2:15 p.m. to 2:42 p.m., twenty-seven (27) minutes, to make any objections or concerns on the record to all matters including jury charges prior to the jury being summoned to be read the jury charges. Defendant argued that Jurist should know the difference between symptom versus condition, truly failing to appreciate the judicially unethical impropriety of insinuating Jurist's pharmaceutical professional expertise with her judicial role at trial. Presiding Jurist is not to be a witness of any stripe and is ethically bound to not insinuate her non-judicial expertise nor her facts into any matter before her in the carrying out of her judicial duties and is mandated therefore to conform the proof adduced at trial to the jury to the applicable law of the case."].

Footnote 3: Tr at 9, line 21.

Footnote 4: See n 1, supra.